**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| C.C., an individual,<br><br>Plaintiff,<br>v.<br><br>WYNDHAM HOTELS & RESORTS, INC., AND MILESTONE HOTELS, LLC,<br><br>Defendants. | Case No. 2:22-cv-03799-ALM-KAJ<br><br>Judge Algenon L. Marbley<br>Magistrate Judge Kimberly A. Jolson |

**DEFENDANT WYNDHAM HOTELS & RESORTS, INC.'S**
**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Defendant Wyndham Hotels & Resorts, Inc. ("WHR") respectfully submits this Memorandum in Opposition to Plaintiff's Motion and Incorporated Memorandum to Compel (ECF No. 198, "Motion" or "Mot."). The Motion seeks to force WHR to restart document discovery and ignore the outcome of the extensive meet and confer process reflected in the Parties' Joint Status Report dated March 20, 2026 (the "March Joint Status Report") because WHR did not produce in this case four (4) documents that it produced in *G.P. v. Wyndham Hotels & Resorts, Inc.*, *et al.*, No. 2:22-cv-02682 (S.D. Ohio). More specifically, Plaintiff seeks to compel WHR to collect and review documents relating to "corporate knowledge of sex trafficking" using Plaintiff's search terms because Plaintiff believes those search terms may capture additional responsive documents. Plaintiff's Motion offers no basis to suggest that WHR has not appropriately responded to discovery and should be denied.

## I. INTRODUCTION

Plaintiff filed this action in 2022, alleging she was trafficked between May and August 2015 at a Super 8® guest lodging facility in Houston, Texas (the "Super 8® Facility") owned and operated by Defendant Milestone Hotels, LLC ("Milestone") pursuant to a franchise agreement. WHR responded to Plaintiff's First Requests for Production of Documents in November 2024 and produced responsive documents in July 2025. In November 2025, Plaintiff suggested that WHR's production was incomplete and demanded that WHR collect and produce documents based on Plaintiff's list of custodians and search terms. Plaintiff then raised the dispute with the Court, which ordered the parties to meet and confer and provide a joint status report reflecting their progress and any areas where they remained at an impasse. Following seven separate meetings addressing Plaintiff's perceived deficiencies, the parties submitted the March Joint Status Report. WHR also supplemented its written discovery responses and document production in April 2026. On November 5, 2026, Plaintiff served supplemental requests for production, none of which seek "corporate knowledge" documents.

In her Motion, Plaintiff ignores these prior efforts and asks the Court to order WHR to collect and review documents based on Plaintiff's search terms for a period of 2008 to the present, a decade more than what Plaintiff asked for in her First Requests for Production. The Court should deny the Motion because, among other reasons, Plaintiff should not be permitted to expand the time period of her requests and dictate the method by which WHR responds to discovery long after WHR responded and without any showing that WHR's production was incomplete. A producing party designs its own collection criteria based on the discovery Plaintiff served. Before seeking to substitute her own criteria, Plaintiff must show that the scope of WHR's production was manifestly unreasonable or the production is deficient. Plaintiff shows neither. Plaintiff does not point to a single request for production to which WHR failed to respond or to which Plaintiff believes

WHR's response or production was incomplete. Rather, Plaintiff relies on four documents that WHR produced in *G.P.* but not in this case (documents her counsel already has), ignoring that *G.P.* involved a different plaintiff and a different alleged trafficking period. Because of these differences (May to August 2015 in this case and 2013 to 2015 in *G.P.*), the four documents fall outside the time period specified in WHR's responses to Plaintiff's First Requests for Production.

## II. RELEVANT BACKGROUND

Plaintiff alleges she was trafficked at the Super 8® Facility between May and August 2015. Third Am. Compl. ¶¶ 24, 51, ECF No. 166 at PageID 1538, 1542–43. Plaintiff served her First Requests for Production on October 17, 2024, and WHR served its Responses and Objections on November 15, 2024 ("WHR R&Os"). Joint Discovery Timeline, ECF No. 196 at PageID 1763. In its responses, WHR specifically objected to (among other things) Plaintiff's definition of the "Relevant time period" because it sought documents from five years before and one year after the alleged trafficking period, i.e., a period of seven years relative to an alleged trafficking period of four months in 2015. Ex. 1 (Part 2 - WHR R&Os) at 4. Subject to its objections, WHR specified what it would produce in response to each request.

Plaintiff did not raise any issues with WHR's responses until November 18, 2025, when Plaintiff sent WHR a "discovery coordination plan" proposing, for the first time, custodians and search terms. ECF No. 196 at PageID 1763; Mot. at 3, PageID 1774. Despite the fact that WHR had responded to Plaintiff's First Requests for Production a year earlier, the plan demanded that WHR run Plaintiff's terms across Plaintiff's list of custodians "from 2008 to the present" (i.e., a period of eighteen years), despite the fact that Plaintiff's First Requests for Production sought

documents spanning seven years. Plaintiff further demanded that WHR produce "universal discovery" across at least six cases involving Plaintiff's counsel. ECF No. 198-8 at PageID 1896.[1]

On February 4, 2026, the Court issued an Order stating that "Plaintiffs do not identify specific discovery deficiencies in any of the six cases at issue" and requiring the parties to meet and confer "regarding Defendant WHR's purported discovery deficiencies in each case." ECF No. 137 at PageID 1356. Plaintiff then sent a letter to WHR listing alleged deficiencies. Ex. 3 (Feb. 5, 2026 Letter) at 1. WHR suggested that the parties address the issues "in the context of particular discovery requests while being mindful of burden and proportionality." Ex. 4 (Feb. 17, 2026 Letter). The parties met and conferred seven separate times between February 23 and March 4, 2026 and discussed each disputed request. ECF No. 196 at PageID 1765; Ex. 2 (March Joint Status Report) at 2. As a result of the agreements reached in that process, and as set forth in detail in the March Joint Status Report, WHR agreed to supplement its document production by, among other things, expanding the date range, including hotels other than the specific facility at issue, including human trafficking awareness training made available from 2012 to 2016, including communications regarding the ECPAT Code and with AAHOA regarding trafficking from 2012 to 2016, and including guest complaints received through customer care or post-stay surveys for domestic Super 8® franchised facilities from 2010 to 2016. *Id.* at 6, 9, 15–16. WHR also supplemented its responses to Plaintiff's interrogatories to identify, among other information, individuals "believed to have been involved in supervising the procurement and/or presentation of human trafficking awareness training between 2012 and 2016." Ex. 5 (WHRs Suppl. R&Os to Pl.'s Interrogs. No. 5) at 4-5. WHR also made a further document production on April 29, 2026.

---

[1] The Court had earlier advised that "Plaintiffs need to accept that they will be litigating these cases on an individual basis, which is how Plaintiffs chose to file them," and that it "will not tinker with the parties' individual discovery requests." ECF No. 103, PageID 1085–86.

Plaintiff did not raise any discovery issues following WHR's supplemental production. Rather, after the parties were unsuccessful in mediation with Judge Kemp in October 2026, Plaintiff raised the issue of discovery in the parties' November 2026 status report, ECF No. 191 at PageID 1729, and the Court entered an Order requiring Plaintiff to file the Motion. ECF No. 193 at PageID 1733. The Motion is limited to Plaintiff's First Requests for Production, but, again without reference to any particular requests, asks the Court to compel discovery of what WHR "knew generally about human trafficking," to compel WHR "to use agreed upon search terms" on corporate files, and to compel WHR "to identify the custodians' files that were searched." Mot. at PageID 1781. To support Plaintiff's contention that WHR's responses remain deficient, Plaintiff points to four documents that WHR produced in *G.P.* but not in *C.C.* (Ex. M) and to three documents produced in *C.C.* but not in *G.P.* (Ex. N). *Id.* at PageID 1779–80. As noted, the alleged trafficking periods in the two cases are different (four months in *C.C.* and three years in *G.P.*). And, remarkably, Plaintiff's Motion does not reference the March Joint Status Report, it does not point to any particular request for production, and it does not identify any objection by WHR that it asks the Court to overrule. Simply, the Motion ignores the long history that precedes it and essentially demands that document discovery begin anew.

## III. ARGUMENTS AND AUTHORITIES

### A. WHR is Entitled to Design a Reasonable Document Search Tailored to this Case.

Without conceding any of its legal arguments regarding relevance under the TVPRA, WHR acknowledges that Plaintiff may pursue discovery as to what was known about trafficking.[2]

[2] WHR maintains that the TVPRA requires actual or constructive knowledge of the specific venture that is alleged to have trafficked the Plaintiff, and that the TVPRA does not require "reasonable diligence" or a duty to prevent trafficking. Mot. at 2, PageID 1773.

Plaintiff's Motion, however, seeks to dictate the method by which WHR responds to her First Requests for Production without first establishing that WHR's production was somehow deficient.

Courts have recognized that "the producing party is 'in the best position to determine the procedures, methodologies, and technologies appropriate for producing [its] own ESI.'" *Allergan, Inc. v. Revance Therapeutics, Inc.*, No. 3:23-cv-00431, 2025 WL 1013987, at *3 (M.D. Tenn. Feb. 12, 2025) (quoting *MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, No. 2:18-cv-2211 (BRM)(LHG), 2022 WL 20359241, at *13 (D.N.J. Feb. 8, 2022) (and collecting cases)); 19 Sedona Conf. J. 1 at 118 (Principle 6) (2018). Indeed, the "producing party has the right in the first instance to decide how it will produce its documents." *MSP Recovery Claims, Series, LLC*, 2022 WL 20359241, at *13 (quoting *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 337 F.R.D. 610, 617 (D.N.J. 2020)). For that reason, the "district court should generally not play a role in dictating the design of a search, choosing search tools, selecting search terms, or designating custodians." *Commins v. NES Rentals Holdings, Inc.*, No. 3:16CV-00608-GNS, 2018 WL 3186983, at *3 (W.D. Ky. June 28, 2018); *see also Allergan, Inc.*, 2025 WL 1013987, at *3 (same). Rather, a "presumption exists in favor of the producing party's selected search terms and custodians, which the requesting party can overcome only by proving that those selections are 'manifestly unreasonable or . . . the resulting production is deficient.'" *Allergan, Inc.*, 2025 WL 1013987, at *3 (quoting *Commins*, 2018 WL 3186983, at *3). The "burden appropriately lies with the requesting party to show that the responding party's [ESI] search was inadequate." *Id.* (citing *Enslin v. Coca-Cola Co.*, No. 2:14-cv-06476, 2016 WL 7042206, at *2 (E.D. Pa. June 8, 2016)).

In *Little Hocking Water Ass'n*, this Court found that the producing party was best positioned to identify the likely sources of responsive documents and declined to expand the search to additional custodians on the requesting party's "opinion" and "suspicion." *Little Hocking Water*

*Ass'n v. E.I. du Pont de Nemours & Co.*, No. 2:09-cv-1081, 2013 WL 608154, at *10 (S.D. Ohio Feb. 19, 2013). The Sixth Circuit, applying the Sedona Principles, has also recognized that litigants are primarily responsible for their own electronically stored information and that "mere skepticism" that an opponent has not produced everything does not warrant intrusive measures. *John B. v. Goetz*, 531 F.3d 448, 459–60 (6th Cir. 2008). The same principles govern custodian choices. The party seeking to add a custodian must show that the custodian's files likely contain relevant information, and "[m]ere speculation that an individual's high-ranking position within an organization might increase the relevance of that individual's files is not a basis for designating that individual as a custodian." *Houston v. Papa John's Int'l, Inc.*, No. 3:18-cv-00825-CHB, 2020 WL 6588505, at *2 (W.D. Ky. Oct. 30, 2020).

Here, WHR responded to Plaintiff's First Requests for Production in November 2024 and produced documents thereafter. WHR's responses and production make clear that it did not confine the issue of so-called "corporate knowledge" to the facility at issue or to the four months of Plaintiff's alleged trafficking. For example, WHR's production includes corporate emails from 2015, brand-wide materials such as Super 8® brand standards, franchise disclosure documents, human trafficking awareness training, and communications with Polaris, a subject matter expert that prepared and presented that training. Of course, Plaintiff's counsel has received document productions from WHR in many cases pending in this Court, and the production of "corporate knowledge" documents in this case generally follows prior cases.[3] Plaintiff's Motion does not suggest otherwise beyond four documents produced in *G.P.*, each of which falls outside the period

[3] *Little Hocking* approved of a similar approach. It held that it was "not unreasonable and was less burdensome for DuPont to rely on its prior searches and documents previously produced in related litigation," and DuPont "reasonably relied on its experience and searches in broader . . . litigation" in selecting custodians. 2013 WL 608154, at *6, *9.

at issue in this case. *See infra* Section III.B. That said, WHR is willing to share its list of search terms and custodians with the Court *in camera*.

Plaintiff's Motion fails to identify any response to Plaintiff's First Requests for Production that she believes to be deficient, nor does Plaintiff identify any categories of documents that she believes are missing. *See infra* Section III.B. Rather, four years into this case, Plaintiff seeks to impose counsel's preferred search terms because they were negotiated with other defendants in other cases. Mot. at 6–7, 9, PageID 1777–78, 1780. That other parties in other cases agreed to a particular protocol does not make a different, reasonable protocol deficient.[4]

The custodian disclosures and negotiated terms Plaintiff points to in *M.A.* and *S.C.* required the parties to confer on custodians and search terms and required disclosure of "the Custodians most likely to possess responsive ESI." Orders Regarding Discovery of ESI, ECF No. 163-2 at § IX, *M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-cv-849 (S.D. Ohio Nov. 21, 2019); ECF No. 153 at § X, *S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-cv-871 (N.D. Ohio Dec. 4, 2023). The custodian ruling in *H.H.* enforced such an order. *H.H. v. G6 Hosp.*, LLC, No. 2:19-cv-755, 2021 WL 1711297, at *8–9 (S.D. Ohio Apr. 30, 2021). There is no ESI order in this case. Nor did *A.S.*, a case from the Southern District of Texas, impose a TVPRA protocol. *Doe (A.S.) v.*

---

[4] Plaintiff relies on *In re Porsche Cars North America, Inc.*, No. 2:11-md-2233, 2012 WL 4361430 (S.D. Ohio Sept. 25, 2012). Mot. at 7–9, PageID 1778–80. In that case, the court ordered disclosure where the producing party had asserted a boilerplate burden objection, applied undisclosed definitions of disputed terms, and produced a total of fifteen emails. *See Id.*, 2012 WL 4361430, at *6–7. None of those circumstances are present here. WHR has produced 674 documents related to "corporate knowledge." *See infra* Section III.B. Plaintiff also cites *Burus v. Wellpoint Cos.*, 434 F. App'x 475 (6th Cir. 2011), but that case does not support her argument. Mot. at 7 n.15, PageID 1778. *In Burus*, the producing party conceded it had not finished responding to a request it had agreed to answer, which reached more than 60,000 emails. *Id.* at 478. The magistrate judge set search terms and a date limit to make that agreed production "more manageable," then denied the plaintiff's renewed motion to compel because the producing party was making a good-faith effort to complete it. *Id.* at 478-79. The Sixth Circuit held only that those rulings were not an abuse of discretion. *Id.* at 479. *Burus* did not impose the requesting party's terms or custodians.

*Wyndham Hotels & Resorts, Inc.*, No. 4:23-cv-01969 (S.D. Tex.). Plaintiff argues that Exhibit C to her Motion includes an order "granting in full" the motion to compel in *A.S.* Mot. at 1 n.2, PageID 1772. But Exhibit C contains only the *A.S.* plaintiff's unsigned proposed order, which would have required production "based off the search terms identified by Plaintiff" and "from the custodian files of the custodians identified by Plaintiff." ECF No. 198-4 at PageID 1883–84. The order the *A.S.* court entered omitted those provisions. Rather, it simply ordered the production of six categories of documents and left the method of search to the parties. *See* Order on Pl.'s Mot. to Compel, ECF No. 57, *Doe (A.S.) v. Wyndham Hotels & Resorts, Inc.*, No. 4:23-cv-01969 (S.D. Tex. Oct. 8, 2024) (Ex. 6).

**B. Plaintiff Has Not Shown That WHR's Production Is Deficient.**

A party moving to compel bears the burden of showing that a production is deficient. *See Allergan*, 2025 WL 1013987, at *3 ("burden appropriately lies with the requesting party to show that the responding party's [ESI] search was inadequate"). Speculation that more documents exist does not carry that burden. *See Little Hocking*, 2013 WL 608154, at *23 (court will not presume that more documents exist because the movant is "surprised by the alleged dearth of responsive documents"); *Davis v. Am. Highwall Mining, LLC*, 570 F. Supp. 3d 491, 497 (E.D. Ky. 2020) ("The Court cannot compel production of documents that AHM insists do not exist based solely on Davis's contrary speculation.").

Plaintiff attempts to show that WHR's production is deficient solely by reference to WHR's production in this case as compared to its production in *G.P.* Mot. at 8-9, PageID 1779–80. As noted, after focusing on the issue for more than a year, Plaintiff identified four documents that WHR produced in *G.P.* but not in this case, and three documents that WHR produced in this case but not in *G.P.* The discrepancy is immaterial and explainable based on the difference in the alleged trafficking periods:

**Exhibit M**. Plaintiff's four *G.P.* documents are dated April 22, 2015, October 9, 2015, November 12, 2015, and December 17, 2015. WHR.GP.SDOH_0001002 (Apr. 22, 2015); WHR.GP.SDOH_0000657 (Oct. 9, 2015); WHR.GP.SDOH_0000678 (Nov. 12, 2015); WHR.GP.SDOH_0000158 (Dec. 17, 2015). In *G.P.*, the plaintiff alleged trafficking between 2013 and 2015. Each of the four documents in Exhibit M falls inside the *G.P.* period and outside the May–August 2015 period that WHR specified in its responses in this case. Ex. 1 (WHR R&Os) at 5–21. Plaintiff then negotiated supplementation of WHR's responses beyond that period, and Plaintiff agreed that WHR's supplementation of the Polaris, ECPAT, and trade-association requests "would satisfy" them. Ex. 2 at 15–16. The documents show that WHR produced what it said it would produce. They do not show that WHR's search in this case failed.[5]

**Exhibit N.** Exhibit N confirms that each document Plaintiff attached bears a C.C. Bates number and that each is the same type of document as those in Exhibit M (i.e., a Polaris, AHLA, or trafficking email), and each is dated within May–August 2015. WHR.CC.SDOH_0000503 (May 26, 2015); WHR.CC.SDOH_0000166 (July 21, 2015); WHR.CC.SDOH_0000427 (July 22, 2015). Exhibit N shows no deficiency.[6]

**WHR's Production.** Plaintiff's exhibits must also be measured against what WHR has produced. Plaintiff served thirty requests for production. Ex. 1. In response, WHR produced 704 documents totaling 10,179 pages, including the franchise agreement and related contracts for the Super 8® Facility, the Super 8® brand standards and franchise disclosure document, the

[5] The Polaris and AHLA documents that Plaintiff describes are the subject of RFP Nos. 19 and 20. As to RFP No. 19, Plaintiff stated in the March Joint Status Report that WHR's supplementation "would satisfy this Request." Ex. 2 at 16. To the extent any document reflecting training made available to franchisees between 2012 and 2016 has not been produced, WHR will produce them.

[6] Plaintiff's exhibit list also identifies WHR.CC.SDOH_00001431. ECF No. 198-1 at PageID 1783. WHR has not produced a document bearing that Bates number in this case.

franchisee's insurance policies, fee and payment records, quality assurance inspection reports, the franchisee's site contact information and training history, guest communications, and press releases. *Id.* (Ex. 1, WHR R&Os to RFP Nos. 8, 10, 21–26, 28, 30). As to "corporate knowledge," WHR's productions included 674 documents reflecting communications about human trafficking, including 172 documents concerning Polaris, 425 concerning ECPAT and The Code, 125 concerning AHLA and AAHOA, and 27 concerning human trafficking awareness training materials made available to Super 8® franchisees. *Id.*; *see, e.g.*, WHR.CC.SDOH_0005048 (Nov. 2014 announcement of Polaris partnership); WHR.CC.SDOH_0001249 (2011 ECPAT Code agreement); WHR.CC.SDOH_0000322 (Aug. 2015 trafficking principles shared with AHLA); WHR.CC.SDOH_0003682 (Jan. 2016 training presentation). Plaintiff's Motion does not address this production, and the Motion offers nothing to suggest that WHR failed to conduct "a reasonable search for responsive information pursuant to a 'reasonably comprehensive search strategy'" as required by the Federal Rules of Civil Procedure. *Enslin*, 2016 WL 7042206, at *3. A handful of documents produced in one case but not the other does not show that a production of this scope is deficient. *See id.* (no "standard of perfection").

### C. A New, Corporate-Wide Search on Plaintiff's Terms is Not Proportional to the Needs of this Case.

Discovery must be "proportional to the needs of the case," considering, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to "go fishing"' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citation omitted).

Plaintiff seeks a search of custodial files "from 2008 to the present" to produce "universal discovery" across cases. Mot. at 3 n.6, PageID 1774, Ex. G at PageID 1896. Plaintiff's own First Requests for Production, however, defined the relevant period as 2010 to 2016. Ex. 1 (Part 1 - Pl.'s First RFPs), Definition ¶ 24. WHR objected to that period, and Plaintiff's proposal now begins two years earlier and runs a decade later. Plaintiff also seeks to expand the subject matter of her First Requests for Production. The Motion challenges WHR's production of "corporate knowledge" documents. *See supra* Section III.B. As a remedy, however, Plaintiff seeks to substitute her preferred list of custodians and search terms, and to impose those search parameters across every case in which her counsel is involved. WHR respectfully submits that such relief—universal terms, universal custodians, and a single production for all cases—stands at odds with the Court's direction that these cases proceed individually. ECF No. 103 at PageID 1085–86; ECF No. 137 at PageID 1356.[7]

## IV. CONCLUSION

For the foregoing reasons, WHR respectfully requests that the Court deny Plaintiff's Motion and Incorporated Memorandum to Compel, or, alternatively, limit any relief to *in camera* review of WHR's search terms and custodians.

Dated: November 25, 2026

Respectfully submitted,

By: */s/ Michael R. Reed*

Michael R. Reed (0063995) - Trial Attorney
**HAHN LOESER & PARKS, LLP**
65 East State Street, Suite 2500
Columbus, Ohio 43215
Tel.: (614) 233-5165
Email: mreed@hahnlaw.com

[7] As noted, WHR will provide the Court with a description of its search criteria for *in camera* review.

David S. Sager (admitted *pro hac vice*)
Marc A. Silverman (*pro hac vice forthcoming*)
Daniel J. Lynch (*pro hac vice forthcoming*)
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Tel.: (973) 520-2550
Email: david.sager@us.dlapiper.com
Email: marc.silverman@us.dlapiper.com
Email: dan.lynch@us.dlapiper.com

Darryl L. Tarver (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
650 S. Exeter Street, Suite 1100
Baltimore, Maryland 21202-4576
Tel.: (410) 580-4123
Email: darryl.tarver@us.dlapiper.com

*Counsel for Defendant*
*Wyndham Hotels & Resorts, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2026, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

*/s/ Michael R. Reed*
Michael R. Reed (0063995)